UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY D. THOMPSON, | |
| Plaintiff, | No. 18 C 3270 |
| v. | Judge Thomas M. Durkin |
| P.A. BARBARA DAVIS AND DR. TAIWO | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timothy D. Thompson brings this action against Dr. Taiwo and physician's assistant Barbara Davis for their deliberate indifference to his serious medical needs based on their failure to timely administer pain medication. The defendants filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Thompson's claim is barred by a settlement agreement he signed in 2017. For the following reasons, the motion is granted in part and denied in part.

**Legal Standard**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard applied to motions under Rule 12(c) is the same standard applied to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to

1

relief." Fed. R. Civ. P. 8(a)(2). Through this statement, defendants must be provided with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means that the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

Plaintiff Timothy D. Thompson is an inmate of the Cook County Department of Corrections who suffers from degenerative disc disease, osteoarthritis, bulging discs, and narrowing of bilateral neural foramina. R. 9 ¶ 1. Following a 2014 diagnosis by pain specialists at Stroger Hospital, Thompson was given a course of treatment including two prescription pain medications, Gabapentin and Tramadol, and regular injections of epidural steroids. *Id.* ¶ 3.

Defendant Barbara Davis, a physician's assistant, became Thompson's primary care provider in early 2016. *Id.* ¶ 4. Thompson alleges that Davis intentionally caused him pain and suffering by routinely allowing his Tramadol prescription to expire and then refusing to renew it, causing him to go extended

2

periods of time without the medication. *Id.* ¶ 5. He also says that Davis refused his requests to see his specialists at the pain clinic and prevented him from obtaining epidural injections with the frequency that his specialists had recommended. *Id.* ¶¶ 6-7. According to Thompson, Davis denied that he had back problems requiring special treatment, *id.* ¶¶ 6, 8, and declined to prescribe him a cane, which caused him to miss appointments with his pain specialists. *Id.* ¶ 18.

Defendant Dr. Taiwo became Thompson's primary care provider in September or October of 2017. *Id.* ¶ 10. Thompson alleges that Dr. Taiwo intentionally caused his Tramadol prescription to expire, in part based on Davis's recommendation. *Id.* ¶¶ 10-11. As of March 2018, Thompson's prescription had been expired since December 2017, when Dr. Taiwo allowed it to expire. *Id.* ¶ 14. Thompson also alleges that Dr. Taiwo responded dismissively when asked why he made that decision and when asked what Thompson should do to manage his increasing pain. *Id.* ¶¶ 10, 12.

Thompson filed this action on May 7, 2018. R. 9 at 1. He previously filed two other lawsuits under 28 U.S.C. § 1983 relating to his treatment at the Cook County Department of Corrections.[1] In the first case, *Thompson v. Khan*, No. 14 C 2287 (N.D. Ill. filed Mar. 28, 2014), Thompson alleged acts of excessive force and deliberate indifference by numerous officers and medical staff members in early 2013. The complaint included allegations that medical staff members denied him his pain

---

[1] The Court may take judicial notice of Thompson's previously filed lawsuits without converting his motion into a motion for summary judgment. *Watkins v. United States*, 854 F.3d 947, 949 (7th Cir. 2017); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

3

medication and allowed his prescription to expire. In the second case, *Thompson v. Soto*, No. 14 C 4644 (N.D. Ill. filed June 18, 2014), Thompson brought an excessive force claim against officers who allegedly mistreated him in 2014.

Thompson eventually settled both *Soto* and *Khan* through an agreement with the State's Attorney of Cook County, dated December 5, 2017 (the "Settlement Agreement"). R. 30-1.[2] The Settlement Agreement contained a release that provides, in relevant part:

> Plaintiff for himself, his heirs and personal representatives, fully and forever releases, acquits and discharges Defendants, and their agents, employees and former employees and agents, either in their official or individual capacities, from any and all actions suits, debts, sums of money, accounts and all claims and demands of whatever nature, in law or in equity, including but not limited to any and all claims for Constitutional violations against Plaintiff and/or any damaged or destroyed property, and any costs accrued arising out of Plaintiff's interaction with Defendants, Cook County, the Cook County Sheriff's Office, and/or any employees or agents of Defendants or Cook County or the Cook County Sheriff's Office which is the subject of *Thompson v. Khan, et al.*, 14-cv-2287 or *Thompson v. Soto, et al.*, 14-cv-4644, or any claim or suit which Plaintiff, his heirs, assigns and legal representatives, may heretofore or hereafter have had by reason of said incidents, including but not limited to any and all claims for Constitutional violations against Plaintiff, state law claims, injunctive relief claims, and/or any damaged or destroyed property, as well as other claims, known or unknown, against Defendants, Cook County, the Cook

---

[2] The Court must decide whether to consider the Settlement Agreement at this stage. Courts in this circuit have considered settlement agreements at the pleadings stage where the parties do not dispute the authenticity of the release. *See Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 807-09 n.6 (S.D. Ill. 2006) (considering settlement agreement on a 12(c) motion); *Taylor v. Wexford Health Sources, Inc.*, 2018 WL 1174397, at *3-4 (N.D. Ill. Mar. 6, 2018); *see also Rodgers v. Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015) (no reversible error in dismissing complaint under Rule 12 based on settlement agreement where the language was undisputed, the plaintiff did not identify evidence that would have any bearing on the motion, and the agreement was unambiguous). Likewise, Thompson and the defendants do not dispute the authenticity of the Settlement Agreement. To the contrary, both parties attached the agreement to their motion papers. Moreover, the Court finds that the agreement is unambiguous. The Court will thus consider it here.

County Sheriff's Office, or their respective current or former agents or employees which occurred prior to the execution date of this Agreement (hereinafter collectively referred to as "Claims") and any costs accrued in connection with the Claims against Defendants. **This is a general release.**

R. 30-1 ¶ 6 (bold in original). Thompson brings this action against Davis and Dr. Taiwo for deliberate indifference to his serious medical needs. The defendants now move for judgment on the pleadings, contending that the Settlement Agreement precludes Thompson's claim.

### Analysis

a) Applicability of the Settlement Agreement

Whether a plaintiff signed a release waiving the right to make a claim may be properly resolved on a motion for judgment on the pleadings. *See Rogers Cartage Co.*, 794 F.3d at 860. Illinois law governs the construction of the Settlement Agreement. *Heard v. Tilden*, 809 F.3d 974, 979 (7th Cir. 2016). When a contract is unambiguous on its face, "the intent of the parties must be construed without consideration of parol evidence." *Cannon v. Burge*, 752 F.3d 1079, 1091 (7th Cir. 2014). A contract is considered ambiguous "if it is capable of being understood in more than once sense." *Id.* at 1989.

The defendants argue that the Settlement Agreement's release encompasses, and thereby precludes, Thompson's entire claim in this case. R. 30 at 3-5. Thompson contends the release only precludes claims relating to the 2013 and 2014 interactions that gave rise to his claims in *Soto* and *Khan,* not to the 2016 to 2018 conduct he alleges here. By its plain terms, the release encompasses not only claims arising from the factual nexus of *Soto* and *Khan*, but also "other claims, known or unknown,

5

against Defendants, Cook County, the Cook County Sheriff's Office, or their respective current or former agents or employees which occurred prior to the execution date of this Agreement." R. 30-1 ¶ 6. Other courts have interpreted agreements with similar language to cover *all* claims arising out of the plaintiff's interaction with Cook County agents and employees, not just those related to the conduct that gave rise to the plaintiff's previous claims. *See, e.g.*, *Daniels v. Rivers*, 2014 WL 6910492, at *3, *6 (N.D. Ill. Dec. 9, 2014) (releasing various types of claims relating to specific past suits "as well as any such claims against Cook County which occurred while Plaintiff was housed in the Cook County Jail within the two year period prior to the execution date of the stipulation to dismiss"); *Russell v. Dart*, 2015 WL 1502926, at *4 (N.D. Ill. Mar. 26, 2015) (same), *aff'd sub nom. Russell v. Cook County*, 661 F. App'x 443 (7th Cir. 2016); *Darvosh v. Lewis*, 66 F. Supp. 3d 1130, 1134 (N.D. Ill. 2014) (releasing "any and all claims other claims stemming from Plaintiff's incarceration at the Cook County Jail"). Likewise, the Settlement Agreement precludes any claims Thompson could have brought based on conduct that occurred prior to its execution.

A general release "is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990). According to the complaint, Thompson "began writing grievances on this practice [of denying him his pain medication] starting in 2013 and has continued up until the present." R. 9 ¶ 14. He supplemented his complaint with eight such grievance forms submitted between

6

January 4, 2016 and December 2, 2017. R. 9 at 16-26. Those forms describe the same conduct he alleges in his complaint, including apparent references to Davis and Dr. Taiwo. *See, e.g.*, *id.* at 26 ("This Dr. and several before him has interferred [sic] with my treatment from the specialist at the pain clinic at Stroger by letting my pain medication expire and refusing to renew it . . ."). Thompson was thus already aware of the defendants' prior conduct when he signed the Settlement Agreement on December 5, 2017, and his claim is barred to the extent it involves conduct that occurred before the Settlement Agreement's effective date. *See Darvosh*, 66 F. Supp. 3d at 1137 ("[T]here is no doubt that the releasing party was aware of the instant claim when he executed the Agreements, as Plaintiff had already been assaulted and had filed a claim for this assault at the time of the execution.").

b) The Settlement Agreement's Effective Date

Having determined that Thompson's claim is barred as to conduct that occurred before the Settlement Agreement's effective date, the Court must determine the date on which the Agreement took effect. Thompson argues the Settlement Agreement became effective on August 16, 2017, the date of the settlement conference at which the parties came to an oral agreement, rather than December 5, 2017, the date that the Settlement Agreement was signed. R. 33 at 6-8. That argument is unavailing.

"When construing the date upon which a legal instrument was executed, the date on the instrument is generally considered *prima facie* evidence of the date of execution." *In re Estate of Elias,* 946 N.E.2d 1015, 1031 (Ill. App. Ct. 2011). The signed

7

Settlement Agreement is dated December 5, 2017. R. 30-1 at 6. The agreement also contains a merger clause, which provides that Thompson, who was represented by counsel at the time, "acknowledges and represents that this settlement agreement contains the entire understanding between the parties, and contains all terms and conditions pertaining to the compromise and settlement of the disputes referenced herein." *Id.* ¶ 10. "The merger doctrine provides that a subsequent complete, valid written agreement will supersede all prior agreements on the same subject matter." *Am. Nat'l Bank & Tr. Co. v. AXA Client Sols., LLC*, 2001 WL 743399, at *6 (N.D. Ill. June 29, 2001). The Settlement Agreement thus supersedes the parties' oral agreement from August 16, 2017. The proper effective date for purpose of interpreting the Release is December 5, 2017, and Thompson's claim is precluded to the extent he alleges conduct that occurred before that date.

c) Date of the Defendants' Conduct

The defendants next argue that Thompson's entire claim should be precluded because the complaint does not allege any specific interaction between Thompson and the defendants after December 5, 2017. In part, the defendants emphasize that the most recent grievance form attached to Thompson's complaint is dated December 2, 2017. R. 30 at 3-4. But Thompson alleges that "[a]s of March 2018, Plaintiff's Tramadol had been expired since December 2017, when Dr. Taiwo allowed it to expire intentionally." R. 9 ¶14. Even if such language does not describe a particular interaction between Thompson and Dr. Taiwo after December 5, 2017, it still alleges deliberately indifferent conduct beyond that date. Prison officials like Dr. Taiwo may

8

exhibit deliberate indifference to a known, serious medical condition through inaction or by delaying necessary treatment and thus needlessly prolonging an inmate's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012); *see also Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (finding that Eighth Amendment violations "continued for as long as the defendants had the power to do something about [plaintiff's] condition" but did not do it). Although the complaint does not clearly allege that Dr. Taiwo remained Thompson's primary care provider (with the power to renew his Tramadol prescription) beyond December 5, 2017, this is not fatal at the pleadings stage. Drawing all reasonable inferences in Thompson's favor, the Court finds that he has alleged that Dr. Taiwo acted with deliberate indifference to his serious medical needs by denying his Tramadol until March 2018.

To adopt the defendants' interpretation would, in theory, allow Dr. Taiwo to deprive Thompson of his Tramadol forever without recourse simply because his conduct started before the effective date of the Settlement Agreement. The law does not compel such a result. *See Tilden*, 809 F.3d at 979 ("every day that the defendants improperly refused to treat [plaintiff's] condition potentially constituted a new act of deliberate indifference"). The Settlement Agreement only waived claims relating to conduct that occurred up to December 5, 2017. R. 30-1 ¶ 6. Drawing all reasonable inferences Thompson's favor, the Court finds that his complaint states a claim of deliberate indifference by Dr. Taiwo between December 5, 2017 and March 2018.

Unlike with Dr. Taiwo, however, Thompson does not allege any conduct by Davis that occurred after the effective date of the Settlement Agreement. To the

9

contrary, Thompson asserts that Dr. Taiwo replaced Davis as his primary care provider in September or October of 2017. Davis presumably did not control Thompson's access to medication after that date. Therefore, the Settlement Agreement precludes Thompson's claim against Davis, and she is dismissed from the case.

## Conclusion

For the reasons stated above, the defendants' motion for judgment on the pleadings is granted with respect to all conduct that took place up until December 5, 2017. The motion is denied with respect to alleged conduct after that date. Because all of Davis's alleged conduct took place before December 5, 2017, she is dismissed from the case.

ENTERED:

*Thomas M Durkin*

———————————————
Honorable Thomas M. Durkin
United States District Judge

Dated: September 9, 2019